## ESTATE of TUINANAU FUIMAONO, Deceased

High Court of American Samoa
Trial Division

PR No. 13-86
PR No. 23-86

June 25, 1992

Before RICHMOND, Associate Justice, VAIVAO, Associate Judge, and BETHAM, Associate Judge.

Counsel: For Co-administrator Sapati Fuimaono,
Charles V. Ala'ilima
For Co-administrator Ato Fuimaono, Gata E. Gurr

Order Determining Heirship and for Further Proceedings:

The motion by co-administrator Sapati Fuimaono (Sapati) of the above-entitled estate[1] for a hearing to close the estate came regularly for hearing on April 6, 1992. The Court heard testimony and received other evidence, and the motion was submitted for decision. The Court, having considered the records on file in this proceeding and the evidence presented at the hearing, finds:

FINDINGS OF FACT

A. Summary of Proceedings

1. On July 10, 1986, Fa'alua Fuimaono (Fa'alua) filed a verified petition for letters of administration of this estate. On September 17, 1986, Sapati also filed a verified petition for letters of administration. These separate proceedings were consolidated on September 22, 1986.

2. Based on these two petitions, the decedent Tuinanau Fuimaono (Tuinanau) was born on March 14, 1906, in American Samoa and died in January 1984 (Fa'alua's petition states on or about January 22 in Hawaii; Sapati's petition states January 1, 1984 in

_____

[1] The Court, on its own motion, is changing the title of this estate proceeding. The existing title, "In the Matter of the Estate of Tuinanau Fuimaono, Deceased, by Fa'alua and Sapati Fuimaono, Co-administrators," along with other similar designations along the way, is confusing, especially when Fa'alua is not, and never has been, an appointed administrator in this proceeding. The change keeps the focus on the underlying purpose of this proceeding, the administration of the decedent's estate, and simplifies the title. As a general rule, the title of all proceedings for the administration of decedents' estates should not be any more elaborate than "Estate of _____, Deceased."

American Samoa). Both petitions agree that Tuinanau died intestate, leaving property in American Samoa subject to administration, and that he was then domiciled in American Samoa. He died in Hawaii.

3. Both petitions list Fa'alua as Tuinanau's surviving wife and Sapati as his surviving son. Fa'alua's petition also lists Saumaleato Fuimaono (Ato) as Tuinanau's surviving son.

4. On February 27, 1987, Fa'alua and Sapati filed a stipulation for their appointment as co-administrators. However, there was no formal appointment of any administrator of record until July 17, 1990.

5. On July 17, 1990, Sapati's petition for Fa'alua's removal as co-administrator, filed June 6, 1990, was pending before the Court. This petition was based on allegations of her mismanagement of the estate, lack of cooperation, and incompetency due to age. Fa'alua controverted these allegations by answer filed on June 14, 1990. There is also a letter in the file alleging similar mismanagement by Sapati.

6. On July 17, 1990, the Court appointed Sapati and Ato as co-administrators, which was formalized by the Court's order dated July 20, 1990.

7. Meanwhile, Fa'alua's notice to creditors was issued and, on July 25, 1986, published in the *Samoa News*. Another notice to creditors, issued by both Fa'alua and Sapati, was published in the *Samoa Journal & Advertiser* on March 5, 1987. There are four apparently unresolved creditors' claims on file. There may be others when the final accounting is filed.

8. Several accountings are on file, following the Court's order of June 7, 1990, requiring both Fa'alua and Sapati to file separate accountings by June 22, 1990. Fa'alua's accounting in response was filed on June 20, 1990, and Sapati's accounting was filed on June 21, 1990. As then directed by the Court on July 5, 1990, Fa'alua filed another accounting of cash received on July 17, 1990. As a result of Sapati's motion citing Ato for contempt filed on July 19, 1990, and stipulated continuances to October 18, 1990, to survey lands sold, still another accounting, prepared jointly by Sapati and Ato, was filed on December 11, 1990. On March 14, 1991, the Court advised the co-administrators, at a hearing for approval of the

123

December 14, 1990, accounting, that there were still unresolved accounting issues.

9. The estate proceedings have remained at this point until the present motion was filed. The essence of this motion, despite its styling as a motion to close, is to determine the heirship to Tuinanau's estate and obtain further direction from the Court.

B. Heirship

1. Tuinanau and Selepa were formally married, probably in 1944. Sapati was born of this relationship on February 23, 1940. The couple probably separated in 1945. There is uncertainty about when and if they ever legally divorced.

2. Fa'alua was apparently born on January 11, 1905, and thus was approximately one year older than Tuinanau. Tuinanau and Fa'alua began living together in 1946 or 1947. There is no certificate of their marriage in the files of American Samoa's Registrar of Vital Statistics. No marriage certificate of another jurisdiction was submitted into evidence. There is a church document purporting to show their marriage on August 22, 1946, performed by a person named "Morrow," presumably a reference to former Chief Justice Arthur A. Morrow. Fa'alua also has a Certificate of Identity travel document, issued on September 8, 1976, by the American Samoa Attorney General's Office, stating that she was married. Attached to this document is an American Samoa Birth Certificate, issued as a late registration on January 28, 1971, stating that she was born in Fagatogo, American Samoa, on January 11, 1905. However, there is also an Attorney General's Alien Registration Form, which Fa'alua completed under oath on February 11, 1964, using her maiden name of Letuli and stating that she was born on March 14, 1930, in and was a citizen of Western Samoa, had entered American Samoa at Fagatogo on June 22, 1947, and was living with the Fuimaono family in Nu'uuli. Tuinanau and this Fuimaono family were long-term residents of Nu'uuli, American Samoa. Not all of these documents can be genuine, and we are persuaded that the Alien Registration Form, other than Fa'alua's date of birth, contains the truth. Thus, we find that the union of Tuinanau and Fa'alua was not solemnized by a marriage ceremony as is required under A.S.C.A. § 42.0101.

3. Clearly, however, Tuinanau and Fa'alua held themselves out publicly as a married couple and were recognized by their

124

Fuimaono family and the public at large as married. The relationship lasted in this manner from 1946 or 1947 until Tuinanau's death in 1984, a period of 37 or 38 years. They used the name Fuimaono throughout these years in all their personal and business transactions, and Ato, their son, carries the same name. However, despite their *de facto* marital relationship, they both knew the relationship was not a legal marriage. Lack of good-faith belief in the validity of a marriage, in a jurisdiction such as American Samoa that does not recognize common-law marriages, precludes finding a putative marriage for inheritance purposes. *Vallera v. Vallera*, 21 Cal. 2d, 134 P.2d 761 (1943).

4. We find that Fa'alua was neither Tuinanau's lawful spouse nor his putative spouse for inheritance purposes.

5. Ato is the only child born of the relationship of Tuinanau and Fa'alua. He is approximately 46 years old. He has lived with his father, until his father died, and mother throughout his life. Both parents publicly acknowledged Ato as their child. If his parents had legally married, he would have been legitimated under A.S.C.A § 42.0501 and unquestionably entitled to inherit from his father's intestate estate under A.S.C.A. §§ 40.0201 and 40.0202. None of these statutes, however, necessarily exclude illegitimate children from inheritance by their own terms. While we recognize the common-law view equating illegitimacy with disinheritance, and that legitimation is essentially a statutory development of the law, we cannot accept disinheritance as a proper result when paternity or maternity is a genuinely established fact. It is, in the words of the United States Supreme Court, "illogical and unjust" under these circumstances to extend the condemnation of irresponsible liaisons as imposing disabilities on their innocent offspring. Interpretation or application of the American Samoa statutes to disinherit under these circumstances would result in impermissible discrimination. *Trimble v. Gordon*, 430 U.S. 762 (1972); *Nagle v. Wood (Estate of Russell R. Richards)*, 178 Conn. 180, 423 A.2d 875 (1979); *see also Craddick v. Territorial Registrar*, 1 A.S.R.2d 10 (1980).

When parents perform their parental duties towards their recognized children, and those children perform their filial obligations in return, as has occurred in this family, a *de facto* right of inheritance should be recognized in principle. *Nagle v. Wood (Estate of Russell R. Richards), supra; see* the discussion in H. Clark, *Law of Domestic Relations*, §§ 5.1, 5.4, 18.8.

6. We find that Ato is Tuinanau's recognized child for inheritance purposes.

## CONCLUSIONS OF LAW AND ORDERS

Based on the foregoing facts, the Court concludes and orders:

1. Since Fa'alua is neither a lawful nor putative surviving spouse, she cannot inherit any part of Tuinanau's estate.

2. Since Sapati and Ato are Tuinanau's children for inheritance purposes, they are entitled to succeed equally to Tuinanau's estate, both real and personal property, equally, a one-half undivided interest to each, as tenants in common. A.S.C.A. §§ 42.0201(b), 42.0202(a).

3. Since Sapati and Ato are the only heirs, they should and at this time shall continue to be co-administrators of Tuinanau's estate.

4. Since these proceedings lack a satisfactory inventory of estate assets and a satisfactory accounting, it is not yet in any condition to permit distribution of the property and closing. Therefore, the co-administrators shall jointly generate and file in this proceeding the following documents:

    a. An inventory of all estate property existing as of the date of Tuinanau's death.

    b. A final accounting of all transactions, including all cash receipts and disbursements, and the validity and disposition of all creditors' claims, since the date of Tuinanau's death to the date of filing the accounting, together with a petition and proposed order for distribution of the estate property.

    c. A petition and proposed order for closing the estate and discharging the co-administrators after the distribution is completed.

5. In order to facilitate preparation of these documents, a hearing before the Court is scheduled on July 23, 1992, at 1:30 p.m., at which the co-administrators shall produce, and be ready to testify about, copies of the following

126

records in the possession of either or both of them, or now known to be in the possession of third parties, or located by either or both of them between now and the date of the hearing:

a.  All records pertaining to all estate property at the date of Tuinanau's death, and in the case of land, before death.

b.  All records pertaining to all transactions concerning estate property after the date of Tuinanau's death until the date of the hearing, including but not limited to all cash receipts and disbursements, and the validity and disposition of creditors' claims.

It is so ordered.